# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN E. RYAN and JOHN J. RYAN, <br><br> Plaintiffs, <br><br> vs. <br><br> TIMOTHY M. HYDEN *et al.*, <br><br> Defendants. | CASE NO. 12CV1489-MMA (BLM) <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS** <br><br> [Doc. Nos. 4, 21, 22, 24, 26, 27, 28, 30, 31, 32, 35.] |

This case arises out of circumstances surrounding a pending default judgment being entered against Plaintiffs Helen E. Ryan ("Helen") and John J. Ryan ("John") in the Eastern District of Virginia. The complaint names over twenty Defendants, and includes roughly the same number of claims. Most of the Defendants appeared and have moved to dismiss Plaintiffs' claims. [Doc. Nos. 4, 21, 22, 24, 26, 27, 28, 30, 31, 32, 35.] Among other issues, the Court is confronted here with the pervasive and unauthorized involvement of Plaintiffs' son, Mykal Ryan ("Mykal"), in this case. For all the reasons stated herein, the Court **GRANTS** Defendants' motions to dismiss in their entirety, and **DISMISSES** Plaintiffs' complaint **with prejudice**.

/ / /

/ / /

/ / /

/ / /

/ / /


# I. BACKGROUND[1]

On March 29, 1999, the John and Christy Ryan Family Trust (the "Family Trust") was created. The Estate of John M. Ryan funded the trust, following John M. Ryan's death on March 19, 2005. John M. Ryan's minor son, JER, was the sole beneficiary of the trust. Mykal, John M. Ryan's brother, served as the executor of John's estate, and as successor trustee of the Family Trust.

## A. Past Related Proceedings

In September 2006, Christy Babbitt-Ryan, the mother and guardian *ad litem* of JER, filed a petition with the Superior Court of the State of California, Alameda County. Ms. Babbitt-Ryan sought to remove Mykal as trustee of the Family Trust on grounds that he committed various breaches of his fiduciary duties and obligations, including using the trust assets for his own personal benefit. The court granted the petition, and entered a total judgment against Mykal in the amount of $1,031,764.81. Thereafter, on November 27, 2007, the Superior Court of the State of Arizona entered a separate judgment against Mykal in favor of the Family Trust in the amount of $56,431.89. The combined judgments entered against Mykal totaled $1,088,196.70.

On July 16, 2008, Mykal filed a voluntary petition under Chapter 7 of Title 11 of the United States Code. Relief was ordered. David R. Ruby, a defendant in the present case, was appointed as Chapter 7 Trustee.

Later, Mr. Ruby, as trustee of the bankruptcy estate, filed an adversary proceeding [Case No. APN-10-05026-FJS] in the Eastern District of Virginia against Mykal's parents, Helen and John J. Ryan, seeking: (1) to avoid and recover fraudulent transfers, fraudulent conveyances and voluntary conveyances; (2) to avoid and recover preferential transfers; (3) to avoid and recover post-petition transfers; (4) turnover of assets; and (5) a judgment of sums determined to be due the bankruptcy estate by Helen and John. The essence of the case involved recovering property Mykal transferred to Helen and John to hinder the Family Trust's efforts to recover missing trust property.

---

[1] The factual background is the Court's attempt to briefly reconstruct the Ryans' complicated litigation history. To do so, the Court relied entirely on orders issued by courts in past proceedings, of which it takes judicial notice pursuant to Federal Rule of Evidence 201. Fed. R. Evid. 201(b)

After the repeated failure of Helen and John to participate in the case, the Court initially entered default judgment against them in the amount of $352,524.31.[2]  However, this order was later vacated by the Court.  On May 24, 2012, the Bankruptcy Court issued its findings of fact and conclusions of law to the United States District Court recommending that default judgment be entered against Helen and John, and awarding damages totaling $352,524.31.  To date, the District Court has yet to rule on the matter.

**B.     The Present Case**

The present case, filed June 18, 2012, is by best estimation a collateral attack on the default judgment entered (though *subsequently vacated*) in Virginia against Helen and John.  The complaint, which includes much rambling and little clarity, claims that the default judgment was the result of widespread fraud committed by Defendants at the above-referenced court proceedings.  [*See generally Compl.*, Doc. No. 1.]  The complaint also includes a litany of other causes of action, including due process and equal protection claims.  Attempting to discern the specific allegations of Plaintiffs' complaint is a demanding, if not impossible, exercise.

Defendants responded with motions to dismiss and motions to strike on various grounds, including lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1); lack of personal jurisdiction under 12(b)(2); improper venue under 12(b)(3); failure to state a claim under 12(b)(6); and failure to comply with the pleading requirements of Rule 8.  It seems Defendants have suffered the same obstacles as the court in discerning what, if any, cognizable claims have been asserted against them.  Each 12(b)(6) motion includes arguments for dismissal based on the vague and conclusory nature of the allegations in the complaint.

**C.     Mykal Ryan's Unauthorized Involvement**

While considering Defendants' motions, the Court became aware of Mykal's ubiquitous involvement in this action.[3]  Mykal is not a party to this action, nor is he an attorney.  Nonetheless,

---

[2] Helen and John filed numerous motions and other requests to the Court, but failed to attend any hearings, even though the Court provided them the opportunity to appear telephonically. This led the Court to enter default against them.

[3] The Court is familiar with Mykal, as he has previously initiated four cases before this Court. [*See* Case Nos. 10-cv-1206, 10-cv-1326, 11-cv-688, and 11-cv-1992.]

1 Mykal–not his parents–appears to be the primary player in the case.  For instance, Mykal,
2 purporting to be John J. Ryan's attorney-in-fact, signed the complaint for John, who passed away
3 on April 21, 2012.[4]  Additionally, Mykal frequently contacts chambers to inquire about the status
4 of the case: on Friday, September 21, he called to discuss "his" upcoming hearing; on Wednesday,
5 September 26, he again called to request a hearing date.  Mykal also attended the Show Cause
6 hearing held by the Court on October 1 regarding these issues, and admitted to drafting the
7 documents filed by Helen.  Further, Mykal plays a starring role in the complaint, while his
8 parents–the *named plaintiffs*–are mere extras.  Indeed, the complaint repeatedly requests relief for
9 harms suffered by Mykal and not his parents.  For instance, the complaint appears to request that
10 the underlying California and Arizona judgments against Mykal be vacated.  [*Compl.* Doc. No. 1,
11 pp. 10-11.]  Mykal, not his mother or deceased father, would be the person to benefit if relief of
12 this kind were granted.

13 The oral and written submissions received to date from both Mykal and Helen make
14 reference to their reputable personal histories, which include significant government service.  In
15 particular, Mykal makes reference to his honorable service in the U.S. Army, including
16 deployments to Iraq, for which both this Court and this nation are certainly grateful.  As the Court
17 mentioned in the October 1 Show Cause hearing, nothing that has been said or done, or that will be
18 said or done, in this proceeding is intended in any way to detract from or diminish those personal
19 accomplishments.  However, that said, there is simply no justification for Mykal's unauthorized
20 involvement in this litigation.

## II. DISCUSSION

**A.**      **Mykal's Involvement Warrants Dismissal of the Case with Prejudice**

23 Mykal's involvement in this case is problematic, because: (1) he is a vexatious litigant; and
24 (2) he is engaging in the unauthorized practice of law.

25 / / /

26 / / /

---

[4] Notably, John J. Ryan predeceased the filing of the complaint by nearly two months, and thus was never a proper plaintiff.  *Estate of John G. Migliaccio v. Midland National Life Ins. Co.*, 436 F. Supp. 2d 1095, 1100-1101 (C.D. Cal. 2006) (a deceased person is incapable of bringing suit).

### 1. Mykal is a vexatious litigant

Mykal's active participation is of particular concern because on March 15, 2012, the Honorable John A. Houston, United States District Judge for the Southern District of California, declared Mykal a vexatious litigant for filing approximately fifteen related cases in the past five years. [*See* Case No. 11-CV-0685, Doc. No. 39.] Judge Houston's order specifically states: "[Mykal Ryan] is enjoined from filing any civil action in a federal district court based upon the issues raised in [Mykal's] prior complaints against Morgan, Quick, Hyden, Toth, Tim Quick and others, without seeking and obtaining court approval." (emphasis added). Mykal did not seek court approval prior to filing the present action. Further, the Defendants in the present case include Mary Morgan, Lee Quick, Timothy Hyden, Matthew Toth, and others. And tellingly, many of the previous cases filed by Mykal include themes and allegations similar to those present in this case.

The Court recognizes that Mykal is not a named plaintiff in this action. Nonetheless, based on the similarities between the present complaint and Mykal's past cases, and Mykal's demeanor and testimony at the October 1 hearing, it is abundantly clear that Mykal is using his elderly mother and deceased father to sidestep–and ultimately defy–Judge Houston's order. Effectively, Helen and John are puppets, with Mykal for a puppeteer. *See In re Kinney*, 201 Cal. App. 4th 951, 959-60 (2d Dist. 2011) (attorney barred from filing "new litigation" either in his own name or that of another litigant serving as his "proxy or puppet" in attempt to "continue his career as a vexatious litigant").

Making matters worse, Judge Houston is not the first to reprimand Mykal for his vexatious litigation tactics. Mykal's incessant filing of cases and documents, and excessive involvement in his parents' affairs, extends to courts outside this district.

For instance, on October 25, 2011, the United States Bankruptcy Court for the Eastern District of Virginia declared Mykal a vexatious litigant, and entered an order enjoining Mykal from filing any further papers in that district without first obtaining leave of the Court. [*See* Case No. 08-50805-FJS, U.S. Bankr. Ct., E.D. Vir., Doc. No. 755.]

And again, on June 15, 2012, the United States Bankruptcy Court for the Eastern District

of Virginia enjoined Mykal from filing any pleadings in the Court on behalf of John J. Ryan. [*See* Case No. 10-5026-FJS, U.S. Bankr. Ct., E.D. Vir., Doc. No. 167.]  In the same order, the Court also prohibited Helen Ryan from filing any new motions, papers, or requests without seeking and obtaining court approval. [*Id.*]  The order further provided that pleadings could be filed by Helen only by counsel admitted to practice before the Court.  [*Id.*]

"A court may dismiss a complaint filed by a vexatious litigant [that violates] an injunctive order entered by another court." *Stich v. United States*, 1991 WL 150218, at *1 (S.D.N.Y. July 31, 1991) (dismissing three complaints in the Southern District of New York because the plaintiff's filings had violated an injunctive order entered by the Northern District of California).  By filing the present action, Mykal violated Judge Houston's order declaring him a vexatious litigant, and Helen violated the order imposed on her by the Bankruptcy Court of the Eastern District of Virginia.  Thus, the case may properly be dismissed.

### 2. Mykal is engaged in the unauthorized practice of law

Not only is Mykal violating Judge Houston's order, but he is also engaged in the unauthorized practice of law.  He is not licensed to practice law in this or any other Court, and may not represent another individual.  "While a non-attorney may appear *pro se* on his own behalf, [h]e has no authority to appear as an attorney for others than himself." *Johns v. Cnty of San Diego*, 114 F.3d 874, 876 (1997) (citations and internal quotation marks omitted).  This is true even of one who has received a power of attorney over another's affairs.  "Despite broad statutory language of the power of attorney with respect to claims and litigation, the attorney in fact may not act as an attorney at law on behalf of his principal, even though the principal could appear *in propria persona* . . . ."  *In re Marriage of Caballero*, 27 Cal. App. 4th 1139, 1151 (2d Dist. 1994) (citing *Drake v. Superior Court*, 21 Cal. App. 4th 1826, 1831 (4th Dist. 1994)); *see also* 7 Cal. Jur. 3d, *Attorneys at Law* § 135 ("One may not act as an attorney for another by virtue of a special power of attorney . . . a power of attorney is not a vehicle for acting as an attorney at law.").  Thus, even assuming Mykal was validly given a durable power of attorney over John's affairs, Mykal has no right to represent John (or his estate) in court.

In his defense, Mykal claims he was unaware he could not represent John in court.  He

stated to the Court at the Show Cause hearing that he has signed for John for two years in other courts without a problem. [*See* Transcript of Oct. 1 Hearing at 14.][5] However, upon further review, Mykal's insistence of ignorance is not only disingenuous but is flat-out wrong. In fact, Mykal *has* been told previously that he cannot represent John in court. On June 15, 2012, the United States Bankruptcy Court for the Eastern District of Virginia noted the following:

> [T]he pleadings indicate that "[John Ryan] passed away on April 21, 2012 [and] Mykal S. Ryan, his son . . . was designated as John J. Ryan, Jr.'s Durable Power of Attorney to act as his attorney (attorney-in-fact)." A power of attorney expires with the death of the party granting the power of attorney . . . . Even assuming that the power of attorney afforded [Mykal] the authority to file pleadings on behalf of his father, John J. Ryan Jr.'s passing eliminates even that attenuated authority.
>
> Accordingly, the Court ORDERS as follows:
>
> 1. No pleadings filed on behalf of John J. Ryan, Jr. shall be accepted by the Clerk of this Court, and Mykal S. Ryan is specifically enjoined from filing any such pleadings;

[Case No. 10-5026-FJS, U.S. Bankr. Ct., E.D. Vir., Doc. No. 167.] Thus, Mykal knew that he could not file pleadings on his father's behalf, and yet he stated otherwise to the Court.

Mykal also claims that he was not actually engaging in the practice of law. This is incorrect. Under California law, the practice of law "includes legal advice and counsel, and the <u>preparation of legal instruments</u> and contracts by which legal rights are secured although such matter may or may not be depending in a court." *Bluestein v. State Bar*, 13 Cal.3d 162, 173 (1974) (emphasis added) (quoting *Crawford v. State Bar*, 54 Cal.2d 659, 666 (1960)). First, Mykal purported to represent John as his attorney-in-fact in this proceeding. Second, Mykal admits to drafting the legal documents that Helen has filed to this Court. Specifically, Mykal states:

> I have drafted all these documents from my father for, as his attorney in fact for the adversary case in the Bankruptcy Court and in the United States District Court in the Eastern District of Virginia. I drafted all of those documents and my mother told me, "okay, those apply to your father, just change the name to my name." [. . .] I can certainly go back to the same papers that I drafted in the last two years, and my mother can look at them and say "those apply in this case, put my name on it and submit it." [. . .] You cannot say that I was practicing law.

---

[5] The parties are advised that transcripts of the October 1, 2012 hearing are available for review. Civil case transcripts may be ordered by contacting the individual court reporter present for the applicable hearing and making financial arrangements. The name and phone number of the court reported assigned to Judge Anello is available on-line at the Court's website. The fee for a transcript is based on a per page rate (refer to General Order 70-I for detailed information).

1  [Transcript of Oct. 1 Hearing at 14-15.]  Despite Mykal's insistence to the contrary, he clearly
2  engaged in the practice of law by signing the complaint as attorney-in-fact for John, and by
3  providing the pleadings and other documents for the case to Helen, who then merely inserted her
4  name into the documents.

5  Under Local Civil Rule 83.3(c)(1)(a), an individual practicing law before this Court is
6  required to be an active member of the State Bar of California.  Under California law, the
7  unauthorized practice of law is a serious matter.  California Business and Professions Code section
8  6125 states that "[n]o person shall practice law in California unless the person is an active member
9  of the State Bar."  Section 6126 provides: "[a]ny person advertising or holding himself or herself
10 out as practicing or entitled to practice law *or otherwise practicing law* who is not an active
11 member of the State Bar . . . is guilty of a misdemeanor punishable by up to one year in a county
12 jail or by a fine of up to one thousand dollars ($1,000), or by both that fine and imprisonment."
13 Cal Bus. & Prof. Code § 6126(a).

14 Further, Federal Rule of Civil Procedure 11(a) requires that pleadings be signed by at least
15 one attorney.  If the party is unrepresented, the pleading must be signed by the party.  *See* Fed. R.
16 Civ. P. 11(a).  Mykal signed the pleading for John in this matter, but he had no authority to do so.
17 Thus, he violated Rule 11(a), which mandates that any pleading not comporting with the rule's
18 requirements be stricken.  Accordingly, the complaint in this case should be stricken.

19 **B.      Additionally, The Case Should Be Dismissed Under FRCP 12(b)(1), 8, and 12(b)(6)**

20 Plaintiffs' case not only suffers from the above-described faults, but also from severe
21 substantive shortcomings.  Though even more defects plague the complaint, the Court decides to
22 focus only on those related to Federal Rules of Civil Procedure 12(b)(1), 8, and 12(b)(6).

23      **1.     The Court lacks subject matter jurisdiction over the Ryans' claims, because
                the case is simultaneously both moot and not ripe for review**
24

25 Federal district courts are "courts of limited jurisdiction," possessing "only that power
26 authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S.
27 546, 552 (2005).  Mootness "is a question of subject matter jurisdiction" and may be challenged by
28 a motion pursuant to Rule 12(b)(1).  *CW Gov't Travel, Inc. v. United States*, 46 Fed. Cl. 554, 556

(2000). "Federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists. If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (citations omitted). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citations omitted). The central issue in any mootness challenge is whether changes in the circumstances existing when the action was filed have forestalled any meaningful relief: "[T]he question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief." *West v. Secretary of Dept. of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000). There can be no effective relief granted in this litigation. The Eastern District of Virginia has *already vacated* the default judgment which provides the foundation for Plaintiffs' complaint.

This leads to yet another justiciability doctrine, that of ripeness. The ripeness doctrine prevents premature adjudication. It is aimed at cases that do not yet have a concrete impact on the parties. *See Thomas v. Union Carbide Agricultural Prod. Co.*, 473 U.S. 568, 580 (1985). Ripeness requires that a dispute have progressed beyond the point where a legal question is merely hypothetical. If a question is too hypothetical at the time it is posed, it is beyond the constitutional reach of an Article III court. "Because ripeness is peculiarly a question of timing, we look at the facts as they exist today in evaluating whether the controversy before us is sufficiently concrete to warrant our intervention." *Assiniboine and Sioux Tribes v. Bd. of Oil and Gas*, 792 F.2d 782, 788 (9th Cir. 1986) (quotations omitted). The present case is not ripe because the proceeding in Virginia remains pending. It is possible that the Virginia court may decide that no default judgment should be entered against the Ryans, which would make determination of the action here fruitless. Additionally, if the Virginia court does enter default judgment, the Ryans may still seek to set aside the default, or appeal it to the Fourth Circuit.

In sum, this Court lacks subject matter jurisdiction over this case, and the case should be dismissed on this ground as well.

///

**2.     The complaint fails to satisfy the pleading requirements of Rules 8 and 12(b)(6)**

Rule 8 of the Federal Rules of Civil Procedure sets forth the general rules of pleadings for complaints and answers. Rule 8(a)(2) requires that a claim be supported by a "short and plain statement of the claim showing that the pleader is entitled to relief ." Rule 8(d)(1) requires each allegation to be "simple, concise, and direct." Rule 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, the plaintiff must allege facts to "state a claim that is plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In this endeavor, courts "are not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009), and while factual allegation are accepted as true, legal conclusions are not. *Iqbal*, 556 U.S. at 678.

Where a plaintiff proceeds *pro se*, the Court must liberally construe the complaint. *Bernhardt v. Los Angeles County*, 339 F. 3d 920, 925 (9th Cir. 2003). In fact, the Supreme Court has held that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks and citations omitted).

Plaintiffs' complaint here fails to meet the requirements of Rule 8 and the standard for Rule 12(b)(6), even under the less stringent requirements imposed upon *pro se* litigants. The complaint has demanded substantial amounts of this Court's time to analyze, not to mention the time the many Defendants have undoubtedly devoted to responding to it. The complaint is not overly lengthy, yet it contains exceedingly repetitious, convoluted, and conclusory allegations that Defendants committed fraud on the court, violated Plaintiffs' due process and equal protection rights, and committed the following laundry list of torts:

> Intrusion upon Solitude and Seclusion, Invasion of Privacy, Misrepresentation, False Light, Defamation, Conspiracy to Commit Defamation, Physical Injury, Personal Property Injury, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Violation of Privacy, Fraudulent Misrepresentation, Abuse of Process, Obstruction of Justice . . . .

[*Compl*. Doc. No. 1, p. 16.] Plaintiffs manage to cite this legion of possible causes of action, but utterly fail to allege specific facts demonstrating any of them. For instance, Plaintiffs claim the civil judgment of nearly $400,000 against them violates Article 14 of the John and Christy Ryan Family Trust. Article 14 provides: "No Trustee designated in this instrument shall be liable to any beneficiary or to any heir of either Settlor for the Trustee's acts or failure to act, except for willful misconduct or gross negligence." Plaintiffs' argument appears to be that they are protected from liability by way of Mykal's shield from liability as provided in Article 14. However, as described above, no judgment has even been levied to date against Plaintiffs. Further, this attenuated argument entirely ignores the provision of Article 14 which allows the Trustee to be held liable in cases of willful misconduct and gross negligence. Plaintiffs merely assume Article 14 was violated  without bothering to tell the Court how. This fails to comport with Rule 8 and Rule 12(b)(6) standards.

Similarly, the rest of Plaintiffs' claims lack specific factual allegations to support the conclusory allegations contained in the complaint. Indeed, the Court has struggled to even understand the basis for Plaintiffs' lawsuit. Accordingly, the complaint fails to set forth a "short and plain statement" showing plaintiff is entitled to relief, nor are its averments  "simple, concise, and direct" as required by Fed. R. Civ. P. 8(d)(1), and should be dismissed under Rule 12(b)(6). Additionally, a court may dismiss a claim with prejudice where amendment would be futile. *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990). In light of the countless deficiencies in Plaintiffs' complaint, the Court finds that amendment would be futile, and dismisses the case with prejudice.

### C.     Request for Disqualification

At the Show Cause hearing on October 1, 2012, Plaintiff Helen Ryan–backed passionately by Mykal–requested the recusal of the undersigned from the action on the basis of bias. The Court denied the request. On October 4, 2012, Mykal and Helen hand delivered to the Court a verified

statement again requesting disqualification of the undersigned. [Doc. No. 125.]

The standard for recusal under 28 U.S.C. §§ 144, 455 is "whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Mayes v. Leipziger*, 729 F.2d 605, 607 (9th Cir. 1984) (quoting *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983)). Importantly, "the alleged prejudice must result from an extrajudicial source; a judge's prior adverse ruling is not sufficient cause for recusal." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986) (citing *Mayes*, 729 F.2d at 607).

Helen seeks disqualification based on ten separate claims. [*See* Doc. No. 125.] The Court finds none of them to be appropriate grounds for recusal. As an example, Count 1 of the verified statement accuses the undersigned of bias based on the purported refusal to enforce Article 14 of the John and Christy Ryan Family Trust. Yet, this assertion assumes that Article 14 should in fact be enforced, when that is an issue which has not yet been resolved in this case. For good reason, the standard for disqualification is not whether a judge has "refused" to award a party the relief it seeks. As another example, Count 6 of the verified statement accuses the Court of engaging in *ex parte* communications with the Defendants. This is patently false and does not deserve a response.

Simply put, Helen has not demonstrated that any act by the undersigned evidences firmly rooted antagonism or bias, nor has she shown any incapacity for ruling fairly on the remaining issues in the case. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). Finally, the undersigned is entirely unaware of any reason he cannot continue to be impartial in exercising his duties relating to this case. *See United States v. Holland*, 519 F.3d 909, 915 (9th Cir. 2009).

With respect to Plaintiff's more scurrilous accusations against the Court, "[i]t has long been established . . . that a party cannot force a judge to recuse himself by engaging in personal attacks on the judge." *Standing Comm. on Discipline of the United States Dist. Court v. Yagman*, 55 F.3d 1430, 1443 (9th Cir. 1995). As the Ninth Circuit noted in the *Yagman* case, "firm and long-standing precedent establishes that unflattering remarks . . . cannot force the disqualification of the judge at whom they are aimed." *Yagman*, 55 F.3d at 1444. Plaintiff's suggestions of personal bias and "egregious" conduct do not provide an adequate basis for recusal in this case.

**D.     Ninth Circuit Appeals**

Plaintiff Helen Ryan has filed several appeals to the Ninth Circuit. The general rule provides, "[t]he filing of a notice of appeal . . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam). However, the district court's jurisdiction is not affected when a litigant files a notice of appeal from a non-appealable order. *Estate of Conners v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993). "When a Notice of Appeal is defective in that it refers to a non-appealable interlocutory order, it does not transfer jurisdiction to the appellate court, and so the ordinary rule that the district court cannot act until the mandate has issued on the appeal does not apply." *Nascimento v. Dummer*, 508 F.3d 905, 908 (9th Cir. 2007). In such a case, the district court "may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby v. Secretary of the United States Navy*, 365 F.2d 385, 389 (9th Cir. 1966).

Here, Helen either appeals non-appealable orders, or prematurely appeals orders the Court has yet to issue. For instance, on October 3, Helen appealed the "dismissal of complaint," referencing the "orders made by the [court] at the hearing held on October 1." [Doc. No. 119, p. 2.] However, the Court issued no orders at the hearing. Instead, the matter was taken under submission. The other bases for appeal are either patently inadequate, or are not interlocutory orders generally appealable under 28 U.S.C. § 1292(a), and the Court did not provide the statement necessary to make the Order an interlocutory order appealable under 28 U.S.C. § 1292(b). Thus, Helen's notices of appeal do not divest this Court of jurisdiction.

## III. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motions to dismiss in their entirety as to all claims and all parties. When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal

1 | "without contradicting any of the allegations of [the] original complaint." *Reddy v. Litton Indus.,*
2 | *Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).
3 | Here, in light of the countless deficiencies in the complaint, amendment would be futile.
4 | Additionally, Mykal's involvement in the case, including his unauthorized practice of law and
5 | outright defiance of Judge Houston's vexatious litigant order provides independent grounds for
6 | dismissal with prejudice. Accordingly, Plaintiffs' complaint is **DISMISSED WITH**
7 | **PREJUDICE**. The Clerk of this Court shall enter judgment against Plaintiffs and terminate the
8 | case. Plaintiffs are advised this matter is closed and no further filings will be accepted.
9 | Because Plaintiffs' complaint has been dismissed, Defendants' pending motions to strike
10 | are **DENIED AS MOOT**.
11 | **IT IS SO ORDERED.**
12 | DATED: October 9, 2012

*[signature]*

Hon. Michael M. Anello
United States District Judge